**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ROBERT LLOYD, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| LISA BIRKMAN, CYNTHIA LONG, VALERIE COVEY, in their official capacities as County Commissioners of Williamson County, Texas, and WILLIAMSON COUNTY, TEXAS, | § § § § § § | A-13-CV-505-DAE |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE DAVID EZRA
UNITED STATES DISTRICT JUDGE:

Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses (Dkt. #144) is before the court. Plaintiff Robert Lloyd seeks attorneys' fees as the prevailing party in the amount of $327,077.00.[1] Defendant Williamson County opposes the motion, conceding that Lloyd was the prevailing party with respect to obtaining a narrow injunction, but arguing that the fees sought are excessive because Lloyd did not prevail on a number of issues. Having considered the parties' briefs, applicable law, and entire case file, the court makes the following Report and Recommendation to the District Court.

**I. BACKGROUND**

Robert Lloyd, Fred Churchill, and Robert Goodrich[2] (collectively "Plaintiffs") brought suit against Lisa Birkman, Cynthia Long, Valerie Covey, and Ron Morrison, individually and in their official capacities as County Commissioners of Williamson County, Texas; Dan Gattis,

---

[1] This is the revised amount stated in Lloyd's reply brief. Dkt. #151 at 7.

[2] Lloyd was represented by Wayne Krause Yang with the Texas Civil Rights Project, who now seeks to recoup his fees. Churchill and Goodrich were separately represented by their own counsel.

1

individually and in his official capacity as County Judge of Williamson County, Texas; and Williamson County, Texas (all collectively "Defendants"). Dkt. #11 (First Amended Complaint or "FAC"). Plaintiffs applied for appointment to an open, non-political, Constable seat and were among the five finalists for the position. FAC at ¶¶ 10-14. Plaintiffs alleged that during their interviews, Defendants illegally asked them questions about their views on abortion, gay marriage, religious affiliation, and voting records. *Id*. at ¶ 15. None of the Plaintiffs were offered the constable position, and Plaintiffs contend they were more qualified than the individual who was hired. *Id.* at ¶¶ 20-23.

Plaintiffs brought suit for First Amendment violations, contending that Defendants violated their rights to freedom of expression, association (including voting), and religion. *Id.* at ¶ 24. Plaintiffs also claimed their Fourteenth Amendment rights were violated because they were denied equal protection in the hiring process. *Id.* at ¶ 25. Plaintiffs asserted a claim that Defendants deprived them of their privacy rights under the federal Constitution by asking them invasive, unreasonable, and unnecessary questions in the hiring process. *Id.* at ¶ 26. Plaintiffs asserted Defendants' actions also violated the Texas Constitution's guarantees of equality rights, privacy rights, and freedom from religious tests. *Id*. at ¶¶ 27-33. Finally, Plaintiffs alleged violations of the Title VII and the Texas Labor Code ("TCHRA"). *Id.* at ¶¶ 34-38. Plaintiffs sought declaratory relief, actual damages, punitive damages, injunctive relief, and attorneys' fees. *Id.* at ¶¶ 39-48. In his First Amended Complaint, Lloyd sought

> an injunction ordering that Defendants immediately reopen the position of constable, for which Plaintiffs had applied. They are also entitled to an injunction preventing Defendants and their agents, employees, and any other persons or entities acting on their behalf, from further utilizing their policy, practice, and custom of hiring, as complained of herein.

FAC at ¶ 47.

Defendants moved for summary judgment in their favor, and Plaintiffs moved for partial summary judgment against Williamson County solely on their claim of a Texas Constitutional privacy right violation.  The undersigned recommended Defendants Birkman, Covey, Long, Morrison and Gattis be granted summary judgment on all of Plaintiffs' claims against them in their official capacities and Plaintiffs' claims against them for employment discrimination under Title VII and the Texas Labor Code. The undersigned also recommended Defendants Gattis and Morrison be granted summary judgment as to Plaintiffs'' First Amendment privacy claims. The undersigned further recommended Plaintiffs be granted summary judgment against Williamson County for their claims of a violation of their privacy rights under the Texas Constitution. Finally, the undersigned recommended Plaintiffs' claims for violations of their rights to freedom of expression and religion under the Texas Constitution and the First Amendment, their right to equal protection under the Texas Constitution and the Fourteenth Amendment, and their federal privacy rights against all defendants should survive, as well as their claims for employment discrimination under Title VII and the Texas Labor Code.  Dkt. #58 (Report and Recommendation, "R&R").

After the undersigned issued his Report and Recommendation but before the District Court ruled on the parties' objections, Plaintiffs Churchill and Goodrich reached a settlement with all Defendants on of all their claims. Dkt. #72.  Their claims were dismissed accordingly. Dkt. #73.

The District Court vacated in part and adopted in part the Report and Recommendation. Dkt. #76.  The District Court denied Lloyd's motion for summary judgment in its entirety and granted in part and denied in part Defendants' motions for summary judgment.  *Id.*  The following claims then remained for trial: Title VII and TCHRA claims against the County; First

Amendment retaliation, First Amendment freedom of expression and freedom of association claims, and Fourteenth Amendment Equal Protection claims against the County and the individual defendants; and Texas Constitution claims against the County and the individual defendants. *Id.*

With leave of court, Defendants filed a supplemental motion for summary judgment. Dkt. #90.  Before that motion was ruled on, Plaintiff and Defendants stipulated to the dismissal of all claims against Gattis and Morrison.  Dkt. #102.  A few days later, the District Court found that Plaintiff failed to demonstrate the presence of clearly established law with regards to his Free Expression, Free Association, Free Exercise, and Establishment Clause claims under the First Amendment; and accordingly, Defendants Birkman, Covey, and Long were entitled to qualified immunity on these issues.  The District Court granted summary judgment on those issue and granted summary judgment to Williamson County on those claims.  Dkt. #104.

The District Court then held a two-day bench trial on Lloyd's remaining claims.  Dkt. #139 at 1.  During the trial, Lloyd dismissed his claims against Birkman, Long, and Covey in their individual capacity and waived his claim for damages.  *Id.* at 4 n.4.  Williamson County then offered to agree to the following injunction:

> Williamson County Commissioners' Court shall not submit any questions, written or oral, to any applicant for a vacant constable's position regarding same-sex marriage, abortion, or religion.

Dkt. #133 (Transcript) 307:7-10. Lloyd's attorney, Yang, rejected that offer:

> THE COURT: What kind of injunction do you think you would get out of this Court?
> MR.YANG: Well, I think that it would be one that wouldn't be limited simply to questions asked but also decisions made based on religion, for one. That was an important point. There are other—there are other things as well involved, but I think the—rather than trying to piecemeal, get something done in the short time we have here, we can get—put our folks on, get things done, continue, trying to get something done if it's going to be possible.

4

> THE COURT: I am having a very difficult time understanding the plaintiff's position because I can tell you right now that there is no conceivable way this Court could enter an injunction which would go into someone's mind. Do you understand that? How would I do that?
> MR. YANG: I think that—I think that the Court could issue—and perhaps my phrasing on that particular example might have been a little vague, but I think that—
> THE COURT: Well, it's a little more than vague. It's impossible. I can't issue an injunction that would go into someone's mind.

*Id.* at 308:3-23.

After the bench trial, in their closing briefs, Lloyd sought injunctive relief that would:

> enjoin Williamson County, including all of its employees, officials, and representatives, from discriminating by religion in its employment practices and appointment practices. "Religion" includes all aspects of religious observance, membership, and practice, as well as belief. "Appointment practices" include all aspects of the process of making appointments, from solicitation of applicants to reference checks, from interview questions to motivating factors to be given consideration in deciding whom to appoint. This injunction not only prohibits asking questions about religious beliefs such as abortion and gay marriage, but recommending or voting for appointment based upon religious factors, such as mere church attendance.

Dkt. #136 at 17.

Following the bench trial, the District Court issued its Findings of Fact and Conclusions of Law. Dkt. #139. The court found the Constable position at issue fell within the policymaker exception to Title VII, and therefore Lloyd was not protected by Title VII. *Id.* at 26. The court also found that Lloyd had failed to prove his THCRA claim and his First Amendment retaliation claim. *Id.* at 29, 31. The court did find that Defendants' questioning deprived Lloyd of his equal protection rights guaranteed by the Fourteenth Amendment, providing a basis for injunctive relief. *Id.* at 34-37. The court did not reach his other claims because they would not afford him any additional relief. *Id.* at 38. The court entered the following permanent injunction:

> Williamson County Officials and their agents are prevented from asking any questions, written or oral, of any applicant to an appointed Constable position, regarding their views on same-sex marriage, abortion, or religious affiliation.

5

*Id.* at 40.

Lloyd now seeks attorneys' fees in the amount of $327,077.00 as the prevailing party.[3] Williamson County opposes the motion and opposes the amount of fees. Williamson County argues the fees are excessive in light of the limited relief Lloyd obtained through trial and the number of issues that Lloyd did not ultimately prevail on.

## II.  MOTION FOR ATTORNEYS' FEES

Although Lloyd was also represented by attorneys from Scott, Douglass & McConnico and Weil, Gotshal & Manges on a pro bono basis, Lloyd only seeks attorneys' fees for the time of a single attorney Wayne Krause Yang, who served as Legal Director of the Texas Civil Rights Project ("TCRP") throughout the litigation. Lloyd contends Yang is entitled to an hourly rate of $350 per hour. After voluntarily removing fees for the feasibly segregated work related to dismissed parties, unsuccessful claims, and preparation for witnesses that were not ultimately called at trial, Lloyd seeks reimbursement for 1,015.93 hours of work, totaling an award of $355,547.50. Lloyd also seeks costs in the amount of $2,371.74 and expenses in the amount of $16,566.59, for a total award of $376,640.74.[4]

Williamson County argues these fees are excessive because Lloyd lost on most of his claims, received no personal benefit from the suit, and gained only a narrow injunction that is unlikely to personally benefit him.[5] Williamson County also argues Yang has not shown he is entitled to his proposed rate and a more appropriate rate would be $250 an hour. Additionally,

---

[3] Lloyd was also represented by pro bono counsel, but this amount is only for the time spent on his behalf by the Texas Civil Rights Project.

[4] These figures are taken from the last page of Lloyd's motion, but notes they are inconsistent with the amount requested on the first page of the motion. Compare Dkt. #144 at 1 with 10. The number of hours for which compensation is sought is taken from page 4 of the motion. However, the court also notes that number multiplied by $350 does not equal the amount of attorneys' fees sought.

[5] Williamson County concedes Lloyd is the prevailing party as to the injunction. Dkt. #148 at n.8.

Williamson County argues many of the hours Yang billed were not reasonable or necessary and should be deducted. Specifically, Williamson County contends Yang's bill still includes 74.85 hours for work related to claims or issues on which Lloyd did not prevail; 398.15 hours of work that could have been done significantly more efficiently; 18 hours for clerical work; 115 hours for tasks that are nonsensical, vague, inaccurate, and/or duplicative; and 16 hours for internal conferences and travel. Finally, after reducing Yang's rate and deducting his unreasonable or unnecessary hours, Williamson County argues the court should deduct 50% given Lloyd's limited success in the suit, then deduct 15% for Yang's failure to exercise billing judgment, and deduct 30% for Yang's use of block billing, which prevents the court from determining how much time Yang spent on each activity.

In reply, Lloyd contends that under Williamson County's calculations he should be given merely $3599.25 in attorneys' fees. Lloyd argues his proposed hourly rate is reasonable and on review has reduced his fee request to $327,077.00. Responding to Williamson County's argument that he was only granted narrow relief, Lloyd points out that he voluntarily waived his right to damages during the trial. Lloyd also contends that, although he did not prevail on all of his claims, his winning and losing claims were so intertwined that Yang's time cannot be further segregated on that basis. Lloyd argues Yang's remaining time on the case was all necessary, including the time Williamson County identified as excessive. In response to Williamson County's argument that some billed time was clerical, Lloyd contends the billing rate for the clerical work has been reduced to $75 per hour to reflect the nature of the work. In response to Williamson County's argument that some time entries were nonsensical, vague, inaccurate, or duplicative, Lloyd says he has removed 76.5 hours as obviously in error, but the remaining time is all adequately described in the billing records. In response to Williamson County's other

7

arguments, Yang has reduced his billing rate by 50% for 3.8 hours attributable to travel and contends time spent on internal discussions is entirely appropriate and recoverable. After these revisions, Lloyd seeks $327,077.00 in attorneys' fees, $2,371.74 in costs, and $16,566.59 in expenses, for a total of $346,015.33.

## III.   APPLICABLE LAW

"In any action or proceeding to enforce a provision of [42 U.S.C. §1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

Courts in the Fifth Circuit apply the lodestar method to calculate attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). The appropriate hourly rate is defined by the market rate in the community. *Id*. (citing *Smith & Fuller*, 685 F.3d at 490). Litigants seeking attorneys' fees have the burden to show the reasonableness of the hours billed and that the attorneys exercised reasonable billing judgment. *Id*. (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). The lodestar amount is entitled to a strong presumption of reasonableness. *Id*. (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

After calculating the lodestar amount, the district court may adjust the amount of attorneys' fees based on the twelve factors set forth in *Johnson v. Georgia Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id*. These factors are: (1) the time and labor required; (2) the novelty and difficulty of issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 502 n.7 (citing *Johnson*, 488 F.2d at 717–19). Many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double-counted. *See id.*; *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

### IV.   ATTORNEYS' FEES

#### A.   Hourly Rate

The appropriate hourly rate is defined by the market rate in the community. *See Black*, 732 F.3d at 502 (citing *Smith & Fuller*, 685 F.3d at 490). The relevant market is the community in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)). Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that "lions at the bar may command." *See Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000).

Lloyd seeks an hourly rate of $350 per hour for Yang's work. In his motion, Lloyd supports this rate with a declaration from another TCRP attorney, a 2013 Texas Lawyer survey

reporting that the average Equity Partner salary in Austin was around $417 per hour, the billing rates for the pro bono law firm partners on the case, and the approved attorney rates in a recent state court disability rights case. *See* Dkt. #144-1 (Decl. of Cassandra Champion) at 4-5; Dkt #144-1 at 71.

Williamson County contends Yang's hourly rate should be reduced to $250 an hour, which is supported by the State Bar Hourly Rate Fact Sheet. Dkt. #148-2. The State Bar Fact Sheet provides survey results of the hourly rates charged by attorneys broken down by geographic location, firm size, and practice area, and demonstrates the median hourly rate for an attorney in the Austin-Round Rock MSA geographical region was $250 in 2015.[6] Williamson County further argues that while its lead attorneys billed Williamson County at the hourly rate of $350 per hour, they are significantly more experienced than Yang. Additionally, the total amounts billed by defense counsel to Williamson County is not representative of the value of the legal services received by Lloyd because his counsel failed to tailor his lawsuit to the facts of the case requiring defense counsel to spend more hours than necessary to defend the suit.

At the time this suit was filed, Yang had been a licensed attorney for twelve years. He had worked at TCRP for all of those twelve years, starting as a staff attorney and serving as the legal director since 2007. Dkt. #151-1 at 80. Lloyd argues the "[t]he State Bar of Texas (SBOT)'s 2015 Hourly Fact Sheet is no more persuasive than the Texas Lawyer survey" but concedes "[t]he most recent Texas Lawyer survey included results from 83 firms that have 3,470 lawyers whereas the SBOT hourly fact sheet offered by Defendant is based on responses of 11,793 members of the State Bar of Texas, with 1,411 responding from the Austin/Round Rock area." Dkt. #151 at 10, n.2. In light of this concession, the court finds the State Bar's Hourly

---

[6] Williamson County cites to the "Other" practice area category because civil rights litigation is not a practice area option. Dkt. #148 (Response) at 13 n.7; Dkt. #148-2 at 17. All cited page numbers are to the CM/ECF page numbering.

Fact Sheet significantly more persuasive evidence regarding hourly billing rates. Additionally, the *Texas Lawyer* articles including the hourly rates are either internally inconsistent or unclear in their meaning. For instance, the *Texas Lawyer* articles appear to state the 2013 equity partner hourly rate in Austin/San Antonio was $353, *see* Dkt. #151-1 at 61, but also states it was $417, *see id.* at 66. Similarly, they also appear to state the 2014 equity partner hourly rate in Austin/San Antonio was both $441, *see id.* at 66, and $320, *see id.* at 74. Accordingly, the court gives the *Texas Lawyer* articles very little weight.

The 2015 State Bar Hourly Fact Sheet informs the court that attorneys practicing Labor-Employment law in the Austin/Round Rock area bill $300 per hour on average. Dkt. #148-2 at 16. While there is no data on the average hourly rate for civil rights litigation, the Hourly Fact Sheet also informs the court that attorneys practicing "Litigation: Personal" bill $200 per hour on average. *Id.* at 17. As noted by Williamson County, the Fact Sheet also supplies an "Other" category with an average hourly rate of $250 per hour. Additionally, comparison to the rates typically billed by the pro bono counsel is unhelpful because there is no evidence they typically practice in this area. Moreover, they come from a prominent firm in the Austin area, and their fees are not necessarily representative of those in the area. *See Hopwood*, 236 F.3d at 281 ("Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command."). Similarly, defense counsels' fees are also not a helpful point of comparison as they also come from highly respected large firms, and have substantially more experience than Yang. *See id.*

Accordingly, Lloyd has not shown that a $350 hourly rate is appropriate for Yang's work. Based on the rates provided in the State Bar Hourly Rate Fact Sheet, an appropriate hourly rate in this case is $250 per hour. The court will use that rate to calculate the Lodestar.

B.     **Hours Billed**

"[Parties] seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black*, 732 F.3d at 502. After considering Williamson County's criticisms of his billed time, Yang reduced the amount of time he seeks reimbursement for to 934.51 hours.

Having reviewed Lloyd's revised time submissions (Dkt. #151-1), further reductions appear necessary. More than a few time entries appear to include work that could have been performed by a less experienced attorney, work that was administrative, or work that had already been performed. The time entry descriptions are not detailed enough to allow the court to believe the work was necessary and not duplicative. For instance, on the same day, Yang has time entries for "Looked over summary of Ds' discovery responses, as well as actual responses, and took note of what we had and things we still needed" and "Read over Ds' discovery responses and documents in greater detail." Dkt. #151-1 at 17. As the first entry includes review of the Defendants' responses, it is unclear whether the second entry was new, necessary work or a duplicative time entry. Similarly, two time entries four days apart state "Wrote letter to client re: W-2s, income, jobs applied to, and factual issues related to interviews." *Id*. at 20. It is unclear why the same letter would need to be drafted twice or whether the second time entry described a continuation of the work described in the first entry. Some time entries include work that is typically performed by less experienced attorneys, such as summarizing depositions or discovery responses or drafting the initial version of documents. Other entries include administrative tasks such as serving or filing documents and downloading or saving documents. At least one entry includes a charge for an entire hour of work when only .75 hours were

recorded. Dkt. #151-1 at 27. Accordingly, to account for all of these issues, the court reduces the hours allowed by 15%.

Additionally, given that the court's entered injunction is not materially different from the injunction that Defendants agreed to during the second day of trial and, more importantly, that after trial Lloyd continued to seek an injunction similar to what the court expressly said it would not issue, those additional trial hours and time spent on post-trial briefing were not reasonably spent. Accordingly, the court will strike those 17.6 hours as not required by this case.[7]

Accordingly, applying the $250 hourly rate to the hours billed and accounting for travel billed at half-time, yields a lodestar amount of $193,707.50.[8] This is a "reasonable fee . . . sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Combs v. City of Huntington, Texas*, 829 F.3d 388, 392–93 (5th Cir. 2016).

## C. *Johnson* Factors

"[T]hough the lodestar is presumed reasonable, it may be adjusted where it does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Combs*, 829 F.3d at 394 (quoting *Perdue*, 559 U.S. at 554). A plaintiff's limited success is just such a factor, and "the Supreme Court has emphasized that the degree of success is the most crucial element in determining a reasonable attorney's fee." *Id*. "'A reduced fee award is appropriate if the *relief*, however significant, is limited in comparison to the scope of the litigation as a whole.'" *Id*. (quoting *Hensley*, 461 U.S. at 440). A district court must

---

[7] Lloyd does not appear to have billed for his actual trial time. However, on two days, he billed 8 hours each day for post-trial work. Dkt. #151-1 at 56. Because Lloyd used block billing, the court cannot segregate out time spent on liability issues versus time spent on relief. On another two days, he billed 0.8 hours each day for discussions regarding the next steps of the case. *Id.* at 56-57.

[8] Lloyd sought reimbursement for 934.51 hours, which the court has reduced by 15% to 794.33. The court has further reduced that time by an additional 17.6 hours to 776.73. The court applies a half-time hourly rate to 3.8 hours of travel, as Lloyd concedes is appropriate. Dkt. #151 at 20. The current calculation is thus: ((776.73-3.8)*$250) + (3.8*($250/2))= ($193,232.50) + ($475)= $193,707.50.

consider any disparity between the amount of damages sought and the amount of damages awarded. *Id.* at 395-96. The most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained. *Id.* at 397 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998)). However, there is not a per se proportionality requirement between success obtained and fees awarded. *Id.* at 398. "Nevertheless, proportionality remains 'an appropriate consideration in the typical case.'" *Id*. at 396 (quoting *Hernandez*, 849 F.2d at 144).

Williamson County argues that the fee award should be reduced because Lloyd brought a large number of claims, only prevailed on a small subset of claims, and only achieved a limited injunction that is unlikely to benefit him personally. Lloyd responds that his claims all stemmed from the same facts and were related, and during trial he gave up any claim to monetary damages as his primary goal for the suit was injunctive relief.

In this suit, Lloyd brought claims under the First Amendment, Fourteenth Amendment, Texas Constitution, Title VII, and Texas Labor Code ("TCHRA") against Williamson County, four County Commissioners individually and in their official capacities, and a County Judge individually and in his individual capacity. Following the District Court's first summary judgment order, the following claims remained for trial: Title VII and TCHRA claims against the County; First Amendment retaliation, First Amendment freedom of expression and freedom of association claims, and Fourteenth Amendment Equal Protection claims against the County and the individual defendants; and Texas Constitutional claims against the County and the individual defendants. In the District Court's second summary judgment order, the court found that Plaintiff failed to demonstrate the presence of clearly established law with regards to his Free Expression, Free Association, Free Exercise, and Establishment Clause claims under the First

14

Amendment, and accordingly Defendants Birkman, Covey, and Long were entitled to qualified immunity on these claims. The District Court granted summary judgment on those issue and granted summary judgment to Williamson County on those claims. Following the bench trial, the District Court found Lloyd failed to prove his Title VII claim, his THCRA claim, and his First Amendment retaliation claim. The court found he had prevailed on his Fourteenth Amendment Equal Protection claim and did not reach his remaining claims because they would not grant him any additional relief. Given that all of these claims stem from the same factual basis, the court cannot easily parse out time spent on unsuccessful claims as opposed to successful claims. Accordingly, the court will consider the outcome of Lloyd's claims in the context of determining his success and the results he achieved. *See Hensley*, 461 U.S. at 436-37 ("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

Lloyd's argument that his lack of damages recovered should not be held against him because he waived that relief is disingenuous. He argues that because he waived his claim for damages, his situation is different than those cases where the plaintiff pursued monetary relief until the final judgment. *See* Dkt. #151 at 11 (distinguishing *Combs*, 829 F.3d 388; *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995); *Migis v. Pearle Vision, Inc.*, 135 F.3d at 1041 (5th Cir.1998)). Lloyd also argues "this case was never about the money." *Id*. at 14. However, the court notes that Lloyd sought monetary relief as actual damages and punitive

damages in his original Complaint, Dkt. #1 at ¶¶ 35-39, and First Amended Complaint, Dkt. #11 at ¶¶ 40-44. Lloyd continued to pursue his claim for monetary relief through the summary judgment process, and he did not waive his claim for monetary relief until the second day of the bench trial. *See* Dkt. #133 (Transcript) at 302:22-303:8. In fact, during the previous day's proceeding, defense counsel referred to receiving a letter from Lloyd providing his computation of damages. *See* Dkt. #132 (Transcript) at 98:1-6. Additionally, the transcript demonstrates that Lloyd only waived monetary relief on the second day when faced with the prospect of an uncomfortable cross examination:

```
15.         MR. YANG: Our understanding is that counsel -- that
16.    defendant, for cross-examination, is going to offer extensive
17.    extrinsic evidence related to its exhibits as part of
18.    cross-examination making a long delve into his personnel
19.    history. My understanding, from the Court previously, is that
20.    the only reason that that type of evidence in question would be
21.    admissible would be for the purposes of damages.
22.         Therefore, Mr. Lloyd wishes to, if it will significantly
23.    shorten the trial and avoid that necessity, then he would be
24.    willing to waive his claim for damages.
```

Dkt. #133 (Transcript) at 302:15-24. While this case is different from those where monetary relief was sought until the entry of judgment, the court cannot ignore the fact that monetary damages were sought until extremely late in the case and were only waived to avoid cross examination on the subject.

Moreover, comparing the injunctive relief sought to that awarded also informs the court that Lloyd's success in the case was extremely limited. The court did not order the Constable position hiring process be reopened; the court did not apply the injunction to all hiring decisions, but instead limited it to future Constable hiring decisions; and the court limited the injunctions to questions asked and not other aspects of the application and decision making process. The court also notes that since the Constable position at issue is an elected position, this injunction will

only have any effect when Williamson County is required to fill a vacant Constable position outside the typical election cycle.

In light of the limited relief Lloyd achieved compared to the relief he sought through trial, it is appropriate to reduce the lodestar by 85% and awards $29,056.13 in attorneys' fees. This fee award is comparable to those in other civil rights cases where the plaintiff achieved limited success. *See, e.g., Saldivar v. Austin Indep. Sch. Dist.*, 2016 WL 1064654, at *6 (W.D. Tex. Mar. 15, 2016) (Sparks, J.) (reducing the lodestar amount by 82% to account for plaintiff's limited success), aff'd, 675 F. App'x 429 (5th Cir. 2017); *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008) (affirming the district court's 50% reduction in lodestar); *Int'l Bhd. of Carpenters v. G.E. Chen Const., Inc.*, 136 F. App'x 36, 39 (9th Cir. 2005) (affirming the district court's 67% reduction in lodestar); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla 2001) (reducing the lodestar by 67%).

Enhancement or reduction based on other *Johnson* factors is not necessary. Although Lloyd argues this was an undesirable case because it was against a local government entity, he was able to secure pro bono counsel from a well-respected local firm. Additionally, Williamson County has shown that his counsel did not shy away from its involvement with the case and frequently spoke to media outlets about the case.

The court recognizes this is an extreme reduction in the fees requested, but believes the reduction is warranted in light of the narrow relief Lloyd received. Moreover, had Yang and Lloyd realistically assessed his case—including Lloyd's unwillingness to submit himself to cross examination and the realistic scope of a possible injunction—this case may not have required much of the fees that were incurred. This is not merely a case where the plaintiff was unable to achieve the full measure of relief he sought in good faith. Rather, this was a case where the

plaintiff was unwilling to pursue the initially sought monetary relief and the injunctive relief he sought was beyond that allowed by law.  While plaintiffs' attorneys do important work in our legal system, especially in civil rights litigation, fee shifting statutes should not provide a boondoggle to attorneys who unnecessarily prolong and complicate litigation by pursuing unrealistic relief.  For these reasons, the undersigned recommends the fee reduction described above.

**V.     COSTS**

Lloyd also seeks $2,371.74 in costs and $16,566.59 in expenses.  Under 28 U.S.C. § 1920, a court may tax the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts, interpreters, and special interpretation services.  28 U.S.C. § 1920.  Williamson County does not specifically dispute the amounts of costs and expenses Lloyd seeks.  However, Lloyd has made no showing that the "expenses," which include parking and meals, are recoverable.  Accordingly, the court recommends that $2,371.74 be awarded in costs and nothing be awarded for the expenses.

**VI.    RECOMMENDATION**

For the reasons given above, the court **RECOMMENDS** that Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses (Dkt. #144) be **GRANTED in part and DENIED in part** and Plaintiff be awarded $29,056.13 in attorneys' fees and $2,371.74 in costs.

**VII.   OBJECTIONS**

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED May 15, 2018.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE